UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN MARTINEZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 1:21-cv-01231-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 22). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for Supplemental Security Income (SSI) benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 8).

Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

**I.　　BACKGROUND**

Plaintiff, proceeding *pro se*, filed his complaint on August 13, 2021. (ECF No. 1). Defendant filed the administrative record (AR) on February 28, 2022. (ECF No. 9). Thereafter,

Plaintiff submitted documents purporting to be motions for summary judgment, but they contained no substantive argument. (*See* ECF Nos. 12, 17, 20). Given Plaintiff's *pro se* status, the Court granted him multiple extensions to file a motion explaining why he believed he had been improperly denied SSI benefits. (*See* ECF Nos. 11, 13, 15, 18, 21).

On October 7, 2022, Plaintiff filed a motion for summary judgment containing an introductory section stating that he "was born with . . . disabilities and they are life long lasting" and he "continue[s] to receive medical treatment." (ECF No. 22, p. 1). Under the section of his form filing asking why the Court should "overturn the Commissioner's decision," Plaintiff states as follows:

> In the October 20, 2020 decision (final in 2021), the findings in Paragraph 4 and Pages 4 through 6 are not supported by substantial evidence of the entire record. Collateral estoppel also requires the Commissioner to follow a prior and favorable decision dated November 4, 2009 (attached) including claimant's long-standing severe impairments and marked limitations. The 2009 decision and its findings, other documents (see below) and parts of the 2020 record, were ignored as substantial evidence of disability at Steps 2 and 3 of the 5-Step evaluation process. 20 CFR Part 416,416.920.
>
> As required by Section 416.920, the decision in 2020 (final on June 10, 2021) did not consider all evidence timely submitted by claimant for the record prior to an August 10, 2020 hearing and the final decision. That evidence includes copies of claimant's prior 2009 favorable decision and exhibits supporting its findings. That favorable decision with findings (including a record of severe mental impairment with marked limitations) are not reflected in the 2020 decision. The 2009 decision and record of exhibits must be considered in determining disability evidenced since claimant's chi[l]dhood.

(*Id.* at 2). Attached to the motion is a notice from the Social Security Administration about a favorable decision from 2009, a copy of the 2009 decision awarding Plaintiff SSI benefits while he was a child, and a list of exhibits in connection with the 2009 decision.

The Court directed Defendant to file a responsive filing to the motion for summary judgment, and the Defendant filed a cross-motion for summary judgment on November 14, 2022. (ECF Nos. 23, 24). Plaintiff did not file a reply, and the fifteen-day period for him to do so has expired. (ECF No. 23).

\\\

## II. ANALYSIS

### A. Substantial Evidence for Step-three Finding and Deference to 2009 Childhood SSI Decision

#### 1. Step-three Finding

Plaintiff first argues that the Administrative Law Judge's (ALJ) decision "in Paragraph 4 and Pages 4 through 6 are not supported by substantial evidence." (ECF No. 22, p. 2). This is a reference to the ALJ's Step Three finding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the Social Security regulations. (A.R. 13-15).[1]

At Step Three, the ALJ considers whether a claimant has an impairment that "meets or equals a listed impairment in appendix 1," and if the claimant has such an impairment, he or she is found "disabled without considering [his or her] age, education, and work experience." 20 C.F.R. § 416.920(d). The listing of impairments "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 416.925. "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). Further, the ALJ's decision must be supported by substantial evidence, which "is defined as more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (internal citation and quotation marks omitted). "A boilerplate finding is insufficient to support a conclusion that a claimant's impairment [do not meet or equal a listed impairment]." *Lewis*, 236 F.3d at 512. However, "[i]f the evidence can support either outcome, the [C]ourt may not substitute its judgment for that of the ALJ." *Tackett*, 180 F.3d at 1098 (internal citation omitted).

At Step Two, during which it is determined whether a claimant has a medically determinable impairment that is severe, *see* 20 C.F.R. § 416.920(c), the ALJ concluded that Plaintiff had the following severe impairments: "a developmental learning disorder (also called learning disorder NOS or other unspecified mental disorder); amblyopia of the bilateral eyes;

---

[1] The Court's citations to the AR use the page number in the lower right-hand corner of the AR.

3

hyperopic astigmatism; and esotropia." (A.R. 13).

However, at Step Three, the ALJ concluded that none of Plaintiff's impairments met or equaled one of the listed impairments:

> Listing 2.02 requires remaining vision in the better eye after best correction of 20/200 or less. Listing 2.03 requires contraction of the visual field in the better eye, with: A. The widest diameter subtending an angle around the point of fixation no greater than 20 degrees; OR B. An MD of 22 decibels or greater, determined by automated static threshold perimetry that measures the central 30 degrees of the visual field; OR C. A visual field efficiency of 20 percent or less, determined by kinetic perimetry. Listing 2.04 requires that the visual efficiency of the better eye after best correction is twenty percent or less; or a visual impairment value of 1.00 or greater after best correction. The requirements of these listings have not been met or equaled.
>
> The severity of the claimant's mental impairment does not meet or medically equal the criteria of listing 12.11. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairment must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.
>
> In understanding, remembering or applying information, the claimant has a moderate limitation. The claimant reports problems with understanding and following directions in his function report. (3E/11) The November 2018 Psychological Consultative Examiner's Report reflects the claimant was oriented to person place and time. (3F/5) He was able to recall the year, the month, the day of the month and the day of the week and the name of the president. (3F/5) He was able to count from 1 by threes to 40 accurately in 14 seconds. He was able to recall 5 of 5 objects on immediate recall and 5 of 5 after 5 minutes. (3F/5) He was able to recall his personal information. His short-term auditory memory as measured by digit span was average. He could recall 6 digits forward and 4 digits backwards. His ability to do arithmetic functions mentally was impaired. (3F/5) He was able to add $4 and $5 accurately and calculate change from a $10 bill given a $6 purchase. (3F/5) He was unable to do any more difficult calculations. He appeared to be functioning in the average range of intelligence. His fund of knowledge appeared to be average. (3F/5) He was able to name 4 men who have been president of United States during his lifetime. He indicated that Brazil is in South America. (3F/5) He also indicated that Abraham Lincoln was president of the United States during the Civil War. He indicated that a piano and a drum are musical instruments and that a boat and an automobile are transportation. (3F/5) The claimant is consistently alert and oriented times three. (See e.g. 10F/2; 4F/14-15) Overall, the record reflects no more than a moderate limitation in understanding, remembering, or applying information.

> In interacting with others, the claimant has a moderate limitation. The claimant reports no problems getting along with others including authority figure[s] in his function report. (3E/11-12) The November 2018 Psychological Consultative Examiner's Report reflects the claimant appeared anxious and had trouble making eye contact. (3F/4) In general, he was very cooperative and pleasant. (3F/4) The report further reflects that the claimant does have friends and likes to go out socializing with them including bowling and going to movies. (3F/4) His affect was consistent with an anxious mood. His thought processes were nonpsychotic and his thought content was logical and relevant. (3F/5) He appeared to have somewhat of a lisp but his speech was generally clear and intelligible. There was no evidence of any suicidal or homicidal ideation. (3F/5) One exam in the record noted poor eye contact. (4F/18) Treatment notes usually reflect normal mood and affect. (See e.g. 4F/17, 20) His judgment and thought content were described as normal. (See e.g. 4F/15) Overall, the record reflects no more than a moderate limitation in interacting with others.
>
> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant did not report problems with concentration or completing tasks in his function report. (3E/11) The November 2018 Psychological Consultative Examiner's Report reflects the claimant likes to play video games and likes to workout. (3F/4) His thought content is described as normal. (4F/15) The claimant is consistently alert and oriented times three. (10F/2; 4F/14-15) Overall, the record reflects no more than a moderate limitation in concentrating, persisting, or maintaining pace.
>
> As for adapting or managing oneself, the claimant has experienced a moderate limitation. The November 2018 Psychological Consultative Examiner's Report reflects the claimant was casually dressed and his grooming and hygiene appeared to be adequate. (3F/4) The report further reflects that he does self-care and makes his own meals. He does his laundry and gets groceries. He helps with general household chores and plays video games. He does not drive a car. (3F/4) He is ambulatory and his gait appears to be regular. (3F/5) Some records reflect that the claimant struggles with ADLs and proper hygiene has the topic at several appointments. (See e.g. 4F/13) The record consistently reflects normal behavior on mental status exams, which suggests an ability to manage his emotions. (See e.g. 4F/17, 20) Overall, the record reflects no more than a moderate limitation in adapting and managing himself.
>
> Because the claimant's mental impairment does not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

(A.R. 13-15).

Plaintiff fails to explain how this determination is not supported by substantial evidence, and the Court concludes that the ALJ offered "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

(internal citation omitted). Notably, the ALJ's detailed explanation was by no means "boilerplate." *Lewis*, 236 F.3d at 512. Rather, the ALJ specifically considered the criteria for the vision impairment listings and noted that they were not met or equaled. Likewise, the ALJ concluded that Plaintiff's mental impairments did not meet the listing criteria because Plaintiff had no more than moderate limitations, citing specific evidence in the record to support this conclusion, primarily the results from the November 2018 Psychological Consultative Examiner's Report.

Accordingly, the Court concludes that the ALJ's Step-three finding was supported by substantial evidence.

### 2. 2009 Childhood SSI Decision

Plaintiff next argues that "[c]ollateral estoppel requires the Commissioner to follow a prior and favorable decision dated November 4, 2009 . . . including claimant's long-standing severe impairments and marked limitations" and that the 2009 decision was "ignored as substantial evidence of disability at Steps 2 and 3." (ECF No. 22, p. 2). The attached decision reveals that, in 2009, there was a determination by an ALJ that Plaintiff had "an impairment or combination of impairments that functionally equals the listings"—notably, Plaintiff had marked limitations "in acquiring and using information" and "in interacting and relating to others." (*Id.* at 9; A.R. 697). The decision found that Plaintiff, who was a child at the time, had been disabled as of January 18, 2007, and was entitled to SSI benefits.

The Court understands Plaintiff to be arguing that, because he was previously awarded benefits in 2009 after being found to have marked mental limitations, the 2020 decision was required to find the same limitations and award him benefits. Plaintiff cites no authority supporting this proposition, and the caselaw holds otherwise.

As one Court has explained in an analogous context, childhood disability determinations are not binding on later decisions evaluating disability when the claimant reaches adulthood:

> Section 1614(a)(3)(H) of the Act provides that individuals who are eligible for SSI benefits as children must have their disability redetermined under the rules for disability used for adults after they turn eighteen. 42 U.S.C. § 1382c(a)(3)(H)(iii). When the SSA redetermines child disability after a claimant turns eighteen, the

> agency applies the standards for adult applicants, without deference to the prior disability finding and award of child's SSI. *See* 20 C.F.R. § 416.987(a)-(b); Social Security Ruling 11-2p § IV(E)(2); *accord Pollard v. Berryhill*, 688 F. Appx 422 (9th Cir. 2017). In other words, the SSA reviews the claimant as if he were a newly applying adult without deference to prior determinations. *See Sabala v. Saul*, No. 1:19-CV-03683-DDD, 2020 WL 6946562, at *3 (D. Colo. Nov. 25, 2020) (citing 20 C.F.R. § 416.987(b)).

*E.M. v. Kijakazi*, 591 F. Supp. 3d 595, 604 (N.D. Cal. 2022).

The Court recognizes that the decision here was not a redetermination of benefits—Plaintiff was twenty-three years old when he applied for benefits—and thus his redetermination proceeding would have occurred years before his SSI application filed in 2018.[2] However, this distinction only serves to highlight the principle cited above—if a childhood disability finding receives no deference at the redetermination stage, it likewise receives no deference for applications filed after the redetermination stage.

Accordingly, the Court concludes that the ALJ was not bound to follow the 2009 decision in terms of considering Steps Two and Three of the five-step process.

### B. Failure to Consider All the Evidence

Plaintiff next asserts that the ALJ "did not consider all evidence timely submitted by claimant for the record prior to an August 10, 2020 hearing and the final decision," which "evidence includes copies of claimant's prior 2009 favorable decision and exhibits supporting its findings," arguing that "[t]he 2009 decision and record of exhibits must be considered in determining disability evidenced since claimant's chi[l]dhood." (ECF No. 22, p. 2).

To the extent that Plaintiff again argues that the ALJ was bound to defer to the 2009 childhood SSI determination, the Court rejects this argument for the reasons listed above. To the extent that Plaintiff argues that he submitted other favorable evidence that the ALJ failed to consider, the record reflects that Plaintiff failed to timely submit this evidence despite receiving an extension of time to do so, and, in any event, the evidence was immaterial:

> I note that the April 20, 2020 hearing was postponed so the claimant could seek representation as well as to allow time to get additional records into the file. His mom indicated on multiple occasions that she had sent in IEP forms, but our office never received them despite multiple contacts with her. I cannot leave the record

---

[2] The redetermination decision is not part of the record.

7

open indefinitely. Further, as these pertain to his high school records when he was a child and an SSI application from when he was over 23 years old is before me, I find that they would be immaterial to his current function in light of the records we have.

(A.R. 10).

Further, although Plaintiff does not directly challenge any of the evidence relied on by the ALJ in support of the 2020 decision, the Court finds it worth noting the limitations that the ALJ assessed for Plaintiff's work capacity and the evidence that the ALJ used to conclude that Plaintiff was not disabled. As for work capacity, the ALJ concluded that Plaintiff was capable of a full range of work at all exertional levels but had some non-exertional limitations related to his vision and mental impairments, such as not utilizing depth perception for job tasks and being limited to simple tasks. (A.R. 15). As for supporting evidence, the ALJ relied on, among other things, Plaintiff's mental health records which did not show more than moderate limitations, vision records which did not support disabling limitations, and Plaintiff's daily activities, including that "[h]e [was] currently working"; could "perform personal care tasks such as bathing, dressing, [and] feeding himself"; and, could "pay bills and count change." (A.R. 18).

The Court concludes that such evidence reasonably supports the ALJ's decision that Plaintiff was not disabled.

### III. CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

  Dated:   **December 5, 2022**                    /s/ _Erica P. Grosjean_
                                                    UNITED STATES MAGISTRATE JUDGE